IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

TRACY L. STORIE                                                                PLAINTIFF

VS.                                        CIVIL NO. 06-3033

MICHAEL J. ASTRUE[1], COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                                 DEFENDANT

## MEMORANDUM OPINION

Tracy Storie ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act

("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of

the Social Security Administration denying her application for disability insurance benefits ("DIB")

and supplemental security income ("SSI") under Titles II and XVI of the Act.

## Background:

The applications for DIB and SSI now before this court were filed on March 11, 2003,

alleging an onset date of January 1, 1994, due to illness caused by silicone breast implants,

polyarthritis, abdominal pain, panic disorder with agoraphobia, anxiety, post-traumatic stress

disorder, and bipolar disorder. (Tr. 13, 16, 59, 75). An administrative hearing was held on March

21, 2005. (Tr. 400-428). Plaintiff was present and represented by counsel.

The ALJ issued a written decision on February 8, 2006, finding that, although severe within

the meaning of the Regulations, plaintiff's impairments did not meet or medically equal an

impairment contained in the Listing of Impairments in Appendix 1 to Subpart P of Regulations No.

4. (Tr. 11-21). The ALJ then determined that plaintiff retained the residual functional capacity

---

[1]Michael J. Astrue became the Social Security Commissioner on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit.

("RFC") to satisfactorily relate to co-workers; understand, remember, and carry out simple instructions; and, maintain personal appearance. (Tr. 14). He also concluded that she was limited, but satisfactory in her ability to follow work rules; use judgment; deal with the public; function independently; maintain attention and concentration; understand, remember, and carry out detailed instructions; behave in an emotionally stable manner; and, relate predictably in social situations. Further, plaintiff was found to be seriously limited but not precluded from dealing with work stresses and demonstrating reliability. With the assistance of a vocational expert ("VE"), the ALJ then concluded that plaintiff could perform work as a poultry eviscerator, small products assembler, and cashier. (Tr. 20).

At the time of the ALJ's decision, plaintiff was forty-two years old and possessed a high school education with one year of college course work. (Tr. 19). The record reveals that she has past relevant work experience ("PRW") as a bail bonding agent and stock control clerk. (Tr. 19, 81).

On May 12, 2006, the Appeals Council declined to review this decision. (Tr. 4-6). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Although both parties were afforded an opportunity to file appeal briefs, plaintiff has chosen not to do so. The case is now ready for decision.

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be

2

affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past

3

relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

## **Discussion:**

Of particular concern to the undersigned is the ALJ's failure to properly consider plaintiff's subjective complaints. We note that the medical evidence reveals that plaintiff suffers from polyarthritis, probable fibromyalgia, and chronic pelvic pain. In determining whether the ALJ properly disregarded plaintiff's subjective complaints of pain, the Court must determine if the ALJ properly followed the requirements of *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (subsequent history omitted)*,* in evaluating her pain and credibility.

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints <u>solely</u> on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski*, 739 F.2d at 1322 (emphasis in original).

4

However, in addition to the requirement that the ALJ consider the plaintiff's allegations of pain, he also has a statutory duty to assess the credibility of plaintiff and other witnesses. *Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992). The ALJ may discredit subjective complaints of pain inconsistent with the record as a whole. *Ownbey v. Shalala*, 5 F.3d 342, 344 (8th Cir. 1993).

The pertinent medical evidence indicates that plaintiff has sought consistent treatment for general connective tissue symptoms, polyarthritis, and arthralgias involving her fingers, wrists, shoulders, hips, and knees that were made worse by exertion. (Tr. 227, 228, 231, 237, 310). It is believed that these symptoms were related to silicone breast implants plaintiff received in 1982. (Tr. 173). Examinations since November 2001 have revealed mild fibrocystic masses in the breasts with tenderness in the right breast; tenderness to palpation over the joints of both hands, especially at the metacarpophalangeal ("MCP") joints; joint tenderness and swelling; a decreased range of motion in the shoulders and right hip; and, effusion and a decreased range of motion in both knees. (Tr. 230). Dr. Lonnie Robinson prescribed Celebrex. (Tr. 230). After three months of treatment with this medication, he noted that plaintiff had shown some response to Celebrex but continued to have tenderness and swelling in her hands, as well as tenderness in the MCP joints. (Tr. 226).

In January 2003, Dr. Joseph Mayus, a rheumatologist, evaluated plaintiff. (Tr. 239, 339-343). Dr. Mayus noted a paucity of tender points. His clinical impression was that her symptoms would most likely prove to be fibromyalgia or some other soft tissue rheumatism problem. Dr. Mayus was unable to make a definitive diagnosis as he found no evidence of inflammatory, degenerative, or metabolic disease to explain her symptoms. He did, however, order laboratory tests to screen

5

plaintiff for other metabolic illnesses.  Because the Celebrex had offered her some relief, Dr. Mayus advised plaintiff to continue taking it.  (Tr. 239, 342).

Plaintiff followed up with Dr. Mayus in April 2003.  (Tr. 337).  At that time, plaintiff presented Dr. Mayus with a letter indicating that his previous evaluation did not support the legal claims in her ongoing law suit regarding her silicone breast implants.  After reviewing his previous notes in detail and evaluating plaintiff, Dr. Mayus told plaintiff that he did not find any evidence of inflammatory disease.  He was of the opinion that plaintiff's condition was most likely fibromyalgia and indicated that he would be willing to follow her for pain management.  Plaintiff, however, did not agree with the doctor's assessment and was advised to seek medical consultation elsewhere.  (Tr. 337).

In April 2005, Dr. Vann Smith completed a neuropsychological evaluation.  (Tr. 345-349). In his evaluation, Dr. Smith diagnosed plaintiff with organic brain syndrome, organic brain dysfunction, and cognitive dysfunction.  (Tr. 348).  He noted that the pattern of "abnormal findings and pathgnomonic indices in plaintiff's neuropsychodiagnostic screening profile was similar to that seen frequently in association with chronic cerebrovascular, toxic, metabolic, or hypoxic encephalopathy; the residual of 'old' traumatic brain insult to which the brain has not fully adapted/compensated; and the central neurochemical dysregulation precipitated by chronically painful disease processes (e.g. degenerative disk disease, osteoarthritis, fibromyalgia, syringomyelia, lupus, MS, etc.)."  (Tr. 348).

6

AO72A
(Rev. 8/82)

Plaintiff has also been treated for urinary urgency and abdominal and vaginal pain beginning in February 2001.  (Tr. 236, 238, 309, 310).  Dr. David Millstein, a urologist, prescribed Detrol LA, Ditropan XL, and Terazol 7.   (Tr. 236, 238, 309, 310)

In June 2003, Dr. Mary Wren, a gynecologist, wrote a letter indicating that she had evaluated plaintiff.  (Tr. 257).  A physical exam revealed that plaintiff's uterus seemed to be fixed, retroverted and retroflexed, which could possibly be secondary to endometriosis[2] or some scar tissue from a ruptured appendix plaintiff had suffered in 1996.  Dr. Wren recommended that plaintiff undergo a laparoscopy for further evaluation, which could be converted to a hysterectomy, should the need arise.  (Tr. 257).

In July 2003, Dr. Cheney, plaintiff's treating physician, wrote a letter indicating that she had treated plaintiff for one year for pelvic pain, as well as recurrent yeast and vaginal infections.   (Tr. 259).  Following the removal of a foreign object from plaintiff's vagina, in November 2001, which proved to be the cap off of a Monistat-1 yeast infection treatment applicator, Dr. Cheney treated plaintiff and her partner for yeast colonization and advised plaintiff to modify her diet, eliminating sugar and avoiding white flour products.  Following treatment, plaintiff's yeast infection "pretty much resolved," however she continued to experience pelvic pain.  (Tr. 259).

Although the ALJ acknowledged plaintiff's complaints of pain, he dismissed them without discussing plaintiff's diagnosis of probable fibromyalgia. *See Reeder v. Apfel*, 214 F.3d 984, 988 (8th

---

[2]Endometriosis is when the kind of tissue that normally lines the uterus is not contained within the uterus.  *See* C. Wellbury, M.D., *Diagnosis and Treatment of Endometriosis*, AMERICAN FAMILY PHYSICIAN, October 15, 1999, *at* www.aafp.org.  It can grow on the ovaries, behind the uterus, on the bowels or bladder, or on other parts of the body.  *Id*.  This "misplaced" tissue can cause abdominal pain (mild to severe), infertility and very heavy periods.  *Id*.

Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record).  Fibromyalgia is a condition that causes  pain in fibrous tissues, muscles, tendons, ligaments and other "white" connective tissues.  Its cause or causes are unknown, there is no cure, and, perhaps of greatest importance to disability law, its symptoms are entirely subjective.  There are no laboratory tests for the presence or severity of fibromyalgia.  The disease is chronic, and "[d]iagnosis is usually made [only] after eliminating other conditions." *Brosnahan v. Barnhart*, 336 F.3d 671, 672 n.1 (8th Cir. 2003).  The principal symptoms are "pain all over," trauma, anxiety fatigue, disturbed sleep, stiffness, irritable bowel symptoms, and—the only symptom that discriminates between it and other diseases of a rheumatic character— multiple tender spots, more precisely eighteen fixed locations on the body that when pressed firmly cause the patient who really has fibromyalgia to flinch.  *See* THE MERCK MANUAL 1369-1371 (16th ed. 1992).

The Eighth Circuit has held, in the context of a fibromyalgia case, that the ability to engage in activities such as cooking, cleaning, and hobbies, does not constitute substantial evidence of the ability to engage in substantial gainful activity.  *Brosnahan*, 336 F.3d 671, 677 (8th Cir. 2003); *See Kelley v. Callahan,* 133 F.3d 583, 588-89 (8th Cir. 1998).  Therefore, it is clear that plaintiff's diagnosis of probable fibromyalgia should have been considered by the ALJ.

The ALJ also dismissed plaintiff's subjective complaints of pain on the basis that Dr. Alice Martinson, a consultative orthopaedist, conducted a one time evaluation of plaintiff in July 2005 and found no evidence of impairment.  (Tr. 351-353).  We note, however, that the opinion of a physician who examined the plaintiff once or not at all generally does not constitute substantial evidence. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999).   Further, in light of the numerous medical

8

records indicating that plaintiff was suffering from chronic pain, Dr. Martinson's evaluation is clearly inconsistent with the record as a whole and should not be given significant weight.

The ALJ also failed to properly develop the record with regard to plaintiff's rheumatological impairments. The record reveals that plaintiff was prescribed Clonazepam, Cyclobenzaprine, and Cymbalta by a Dr. Safwan Sakr. (Tr. 367). Dr. Sakr is a rheumatologist. However, the record contains no records from Dr. Sakr. As the evidence of record reveals that plaintiff was treated by this doctor, we believe that the ALJ should have requested medical records from him. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (holding that the ALJ's duty to develop the record includes a duty to seek clarification from treating physicians if a crucial issue is undeveloped or underdeveloped). Therefore, because the ALJ dismissed plaintiff's complaints of pain, determined that she had no physical or exertional limitations, and failed to request additional medical evidence to clarify the record with regard to plaintiff's impairments, we believe that remand is necessary. On remand, the ALJ is directed to reconsider the evidence concerning plaintiff's subjective complaints and develop the record further concerning plaintiff's probable fibromyalgia and chronic pain.

The record also reveals that plaintiff abused drugs in the 1990s. It does not, however, indicate when plaintiff stopped using drugs. Therefore, on remand, the ALJ should clarify the record concerning plaintiff's drug use and when it stopped.

## Conclusion:

Based on the foregoing, we reverse the ALJ's decision and remand this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

AO72A
(Rev. 8/82)

ENTERED this 21st day of May 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

10